Good morning. May it please the Court again, Jim Bickerton for Plaintiff Julie Sigwart, who is present in the Court today with her family. Again, this was a Rule 12b-6 motion, and the belated concession, I think, after the deadline for a 28-J letter by the appellee that many of the issues have been resolved, it's too little and too late. They pretend that there's still an issue about causation and damages. They just ignore the language in Hungate. Hungate clearly said, if you allege that you have lost equity and lost the use of property as a result of a wrongful foreclosure, that was nearly identical to this one. Let me ask a question about that. It was too late, notice and cure, but did you notify the bank as these things were happening? In other words, you claim it would be futile at this point for you to comply with the notice and cure provision because U.S. Bank sold the property to a third-party purchaser years ago. But did you notify the U.S. Bank of its alleged transgressions as they were happening? For example, did you ask U.S. Bank to advertise the sale of the property in the correct county when the sale was happening? Why or why not? First of all, the answer is no. It wasn't done contemporaneously. Did you know about it? No. When you say you, you mean did Mrs. Sigwert know that it was? I think the evidence will show that she did not know which county the advertisement was being published in. It's not something that she would be tracking or even required to track. Did she know the property was being sold? Yes. The borrower receives a notice, essentially a copy of the notice that's published, but the borrower doesn't know, for example, whether it has been published, where it has been published, or when it was published, unless they read the newspaper every day and follow and try to find it. It's not really. So let's cut to the chase here. Obviously, the borrower does get notice. What then, with respect to these procedure requirements, when there's a lot of briefing on one day forward, one day back, what is the causation between those various, I'll call them, publication requirements and the one day and the claim damages here? Well, the causation is in the, and it comes really from the strictness that's required. You take property without authority. That's a loss. And I'd like to stress something that we keep running into here, which is the defense position. Russell, wait just a minute. Okay, now we're getting to the bottom of the argument. So you're saying that any time a lender or other institution makes a one-day mistake in the publication, that there's strict liability of a loss. Is that your position? That is essentially correct. And that you don't need to show any other causation between the publication events and the ultimate disposition of the property. That's not quite our position, but I can explain. First of all, the Santiago case, a very important case. It's in our 28J letter. It came down in January of 2016. And it says the remedy for wrongful foreclosure is restoration of the property and title. But if it has been sold and it's impracticable to give the property back, then you give restitution based upon what the person lost from the sale. But what did they lose? In Santiago, they lost their- No, no, here. Here. What is the loss? They lost what they paid for the property, less the amount of the debt. But they were in default, correct? Of course. No one can bring these claims unless they're in default. The bank has none of these duties. So, basically, you're saying that the property shouldn't have been sold? It should not have been sold in violation of law. They have a choice. They can go to a judge and do it correctly, or they can follow the statute, which is very strict and says you can do it this way. And the law has developed these remedies. These remedies are cited in our brief. What is the restitution then? In other words, the one-day difference, and we'll just- Silva was there. Let's assume that you're correct on the way the days are to be counted. As a result of the one-day difference in the timing of the sale, what is the causation between that and wrongful loss of equity? It's wrongful, and the Hungate case precisely held that this was one day. This is the exact facts of this case. It's not open to question anymore. So this was a violation of the statute. It was an unlawful foreclosure, strictly applied, which means the remedy is to return the property, and if you can't do that, you make the financial equivalent of doing that. The Santiago case says it clearly. Well, we don't do a lot of property work in this court, and I've kind of been struggling with the Hungate decision. But it seems to me underlying that decision is the notion that if you don't comply with the statute, you may have stated a claim. You may be able to state a claim that you haven't gotten the most, the bank didn't get the most for the property. I don't think that that is the claim. You don't think that that's underlying what the court is worried about in Hungate? No. You have to read all of the cases together. It's a series of cases starting way back with Silva in the 1800s, which they build upon. Part of the problem in these cases is that the district court here would reject these old cases and that they're no longer good law, and the Hawaii Supreme Court says, no, this is an unbroken stream of law. Silva was also one day early, one day early, the exact same case. They voided the sale, and in Silva 2, which was decided a few months later, they said in Silva 1, we held that you're entitled to return of the property or to be paid its value. It's really a do-over. See, what the law says in this context is the bank should have done it right. Since they didn't, you're going to be put back where you all were and the bank can do it again. The bank starts it all over again. Exactly. That's the only way. And when you say it's strict, that's what it means. If you say, let's imagine a hypothetical scenario where you did it right and compared the difference, that is not strict. And there's a case that just came down this summer called O'Grady v. State, a Hawaii State Supreme Court case, not about foreclosure, but they said this idea that you've got to compare the outcome of the tort situation with the outcome of the non-tort situation and measure the damages by the difference is absolutely wrong in tort cases. They said that is not the substantial factor test. That is a but-for test applicable only in legal malpractice cases. That's what they held. So the law is very clear that a Hawaii UDAP claim is a tort and it's a substantial factor test. Once you breach your duty, we measure the damages at common law, according to Silva, according to all the other cases that we cite. But now you're mixing and matching between the statutory foreclosure and the UDAP claim. So if your damages under a UDAP claim are tort damages, the tort damages don't give you your property back. They make an evaluation of the loss, correct? For this particular tort, the cases say your damages are measured by the loss of the asset. And I'd ask the court also to look at the restatement of Second of Torts 927, which lays out how you measure damages when someone takes your property, either in a conversion or in a real property situation. That's a restatement of torts. That's a torts. Is this subject dealt with in the restatement of property at all? I think not the damages calculation for a wrongful foreclosure, but they do. No, the strict liability. I haven't seen that in the restatement of property. This is from the cases. This court in the Kekoa case said that very thing. They pointed out that it was strictly enforced. There was one error, I think, in Kekoa. They used the term fairly traceable as the test for causation, and that is actually, if you read the cases they cite, that was a standing standard. It's not the test. The test is still a substantial factor. I'd just like to make sure I understand what you're asking for. You claim the following damages your client did. The lost net equity in her property as measured by the difference between the fair market value of the property and the price at which it was wrongfully auctioned and the loss of use of her property. Is that what you're claiming? That's what we pled in the complaint. I think that the law, as we've read it since then, is a little broader, but we certainly are claiming that. And I want to stress the Fukuda case makes clear that we get the loss of use of an asset that was wrongfully taken until the situation is rectified. Now, there is a right of offset that the defense has for the amount of the debt owed. If you're trying to put people back, let's have a do-over. This is strict. You did it wrong. You have to do it correctly. Let's give you the property back or its value. We can offset it by the amount of the debt, and then we'll see where we are. And until you do that, we get the loss of use. It's a very large amount because we're involving houses, but if this was a television set or a washing machine, you'd have no trouble at all with that analysis. Thank you. Thank you very much. Thank you very much. Good morning, Your Honor. May it please the Court, my name is Glenn Melchinger, and I'm appearing on behalf of the appellees. There are very few issues really left in this appeal. After the decisions in Hungate and after the decisions in Lima and Bald, which are memorandum decisions, but essentially we concede that the UDAP practices, the practices alleged to be unfair and deceptive, are sufficiently pled for 12B purposes. However, the one issue that does remain in this case, the primary issue, is the one that the court below based its ruling upon and the one that this court in Keiko, Alisa, also found. There's a very similar issue obviously involved in Keiko, Alisa, and there's an improper issue in that case in the notification of the sale and there was no public announcement made. And that infirmity in the sale process, however, did not mean that at the end of the day the plaintiff could recover the equity in her house or could recover the lost rental value of the house. This court specifically rejected those as damage theories. And so in this case, as just stated by counsel, that is precisely what is being sought. The equity in the house and the lost use or rental value of the property is precisely what's being requested in the complaint. The problem is that while Hungate, which counsel relies on, did permit that case to go forward and find sufficient causation, this is not a case involving the Hawaii Rules of Procedure 8. This is a case involving Twombly and Iqbal pleading standards. And the court below rightly held that the complaint did not contain a factual predicate that nudged the causation of the harm over the edge from possibility to plausibility. And in this case, for example, we do not contest that the holding at Hungate on the 29-day or the 28-day practice any further, but we do contest that there is sufficient allegation of causation of harm based on that practice. Similarly, that goes for all of the rest of the alleged UDAP acts in that case. Essentially, that is the one issue that it would benefit having some clarity on. What did Hungate do then? Well, the Hungate case essentially in this context, we would concede that the Hungate case resolved the four, well at least three of the alleged issues or actually two of the alleged issues and Bald and Lima have sort of resolved the other quitclaim practice. We would concede that that sufficiently states a practice that could be conceived and could be found by a jury to be deceptive or unfair. But the causation elements are not, Hungate did not make any ruling on or touch on, for example, Keiko Alisa's finding that those types of damages, again the loss of equity or the alleged loss of use and perhaps rental value that might come from that in the form of damages, Hungate did not touch on that at all. Well, you keep saying what it didn't do. Right. But I'm asking you what it did do. It did. What did it mean? Why did it reverse and send it back when there was a fairly technical violation of the dates required for publication? Right. Well, Hungate did mean that at the 12B stage, at the pleading stage, that for this case what it means is that the similarly pled claims relating to the 28-day practice sufficiently state a bad act, an unfair and deceptive act. It does not go so far, however, Hungate does not go so far as to establish that the causation pled here is sufficient and it does not overrule. Did the district court reach that question? The district court did reach that question. The district court's fundamental holding was that there was no causation that was adequately pled. Okay. So in terms of what the district court did, as I read it, is that claim with respect to damages from loss of equity was dismissed without prejudice and with an opportunity with leave to amend with more specificity, but then no amended complaint was filed. Is that correct? That's correct. There was leave granted. I know that in the opening brief at page 4 it does state that there was a motion that was required for motion to leave, I'm sorry, to obtain leave to amend the complaint, but the court freely granted leave in its order. Right. There was no amendment. I think the question, this is why given your acknowledgment of Hungate and the time period, what this all boils down to is whether the complaint as pled is sufficient to meet the Twombly requirement for causation. The district court said no, but you have an opportunity to amend, but there's no amendment. Isn't that sort of what the case boils down to? I would agree with that, Your Honor. It's kind of hard after 20 or more minutes that we've been talking about everything but that. So since we have de novo review, if we determine that the complaint was sufficient on its face first time around, then it wouldn't matter that they didn't amend, correct? That is correct. But if we were to determine that the complaint is deficient and that they should have taken advantage of the district court's invitation to amend, then it would be an affirmance of the dismissal, correct? I agree. Yes, correct. Thank you. Thank you. There is one more issue I suppose to address, which is the issue of the rule, I'm sorry, under the Section 20 in the mortgage, which is we would also submit that it's proper to uphold the lower court's ruling that that positively rejects the claims under Section 22 of the mortgage, the power of sale clause required more than an oral postponement to occur. That, I think, is also not something that Hungate touched upon. In fact, Hungate expressly held that it was Section 22 of the mortgage that required that kind of oral postponement practice. In Hungate, however, there was no defense asserted based on the failure to provide notice and give the bank an opportunity to cure that defect. So that issue did not arise in Hungate. But in short, the decision in Hungate does not affect the lower court's ruling on that particular issue regarding Section 20, notice and cure. Thank you. Thank you. You used your time, but I'd like to give you a minute and rebuttal. And while you're coming to the podium, I do have a question of, since the district court gave you an opportunity to amend, why was there no amended complaint filed? In our view, it was clear that she had misapplied the law of damages, the law that we've cited to you, the longstanding Hawaii law, and set a standard to block it. So you basically wanted to roll the dice with the Court of Appeals and not take the invited amendment with the district court. We would have spent two years in front of an obviously hostile judge getting sliced up because the damages that she would say we get are probably just a few dollars. And for what purpose? I think that the law in Hungate, crystal clear, you folks in Compton told us that it's enough in these cases to allege injury. Once you've alleged these wrongful acts, it flows. Twombly doesn't say you look at each allegation by itself in a vacuum. This is a long complaint that alleges that someone lost their house. It doesn't take many more paragraphs than that to say that there's an injury alleged. I mean, Twombly isn't asking us to get so granular. Is it plausible that someone's hurt if their house was taken without authority in violation of law? Yes, and that's the end of it. And in Hungate, they quoted Compton. They came back and they said, Twombly itself wasn't a damages case. It didn't say we've got to take this standard down to every paragraph of the complaint. And that was what I started out by saying. Twombly's been carried just a little too far. We're almost in Louisiana code pleading at this point. Thank you. Thank you. I'd like to thank both counsel for your argument this morning. The case of Sigwart v. U.S. Bank is submitted.
judges: Schroeder, D.W. Nelson, McKeown